# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | **COMPLAINT** |
| BILAL & AAYA SUBWAY, INC., H&F SUBWAY INC., AND L&H SUBWAY, INC. | ) ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This action is filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended ("Title VII") and Title I of the Civil Rights Act of 1992, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of race and color, and to provide appropriate relief to Darryl Robinson ("Mr. Robinson") and applicants and former employees of the named Defendants who were also adversely affected by Defendants' unlawful employment practices. As alleged with greater particularity herein, Plaintiff Equal Employment Opportunity Commission ("Commission") alleges that Defendants, Bilal & Aaya Subway, Inc., H&F Subway Inc., and L&H Subway, Inc. ("Defendants") operate as an integrated enterprise and that Defendants unlawfully discriminated against Mr. Robinson by subjecting him to a hostile work environment and forcing him to resign because of his race and color (Black). In addition, the Commission alleges that Defendants discharged a class of employees because of their race and color (Black) and failed to hire a class of applicants because of their race and color (Black).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f) (1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ("Commission") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, as amended, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. Defendant Bilal & Aaya Subway, Inc. operates a Subway branded fast food restaurant franchise in Hope Mills, North Carolina.

5. At all relevant times, Defendant Bilal & Aaya Subway, Inc., a North Carolina Corporation, has continuously done business in the State of North Carolina and the City of Hope Mills.

6. Defendant H&F Subway Inc. operates a Subway branded fast food restaurant franchise located in Fayetteville, North Carolina.

7. At all relevant times, Defendant H&F Subway Inc., a North Carolina Corporation, has continuously done business in the State of North Carolina and the City of Fayetteville.

8. Defendant L&H Subway, Inc. operates a Subway branded fast food restaurant franchise located in Fayetteville, North Carolina.

9. At all relevant times, Defendant L&H Subway, Inc., a North Carolina Corporation, has continuously done business in the State of North Carolina and the City of Fayetteville.

10. At all relevant times, each defendant continuously had at least 15 employees at and between Defendants' locations.

11. At all relevant times, each defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## DEFENDANTS FORM AN INTEGRATED ENTERPRISE

12. At all relevant times, Defendants have operated as an integrated enterprise.

13. Upon information and belief, Defendants have common ownership, management, and financial control.

14. Upon information and belief, Defendants share employment policies and operate under the same owner-mandated policies and procedures.

15. Defendants share employees. For example, employees are assigned to work at different locations within the same work week or workday.

16. Defendants also share management. For example, Darryl Robinson managed all the locations for all three Defendants at various times.

17. Upon information and belief, Defendants share supplies among the various locations.

18. Upon information and belief, Defendants' President and Owner may own and operate at least four additional Subway branded restaurant franchises, that may form part of this integrated enterprise.

## ADMINISTRATIVE PROCEDURES

19.     More than thirty (30) days prior to the institution of this lawsuit, Mr. Robinson filed a charge with the Commission alleging violations of Title VII by Subway.

20.     On October 4, 2022, the Commission issued a Letter of Determination to Defendants. The letter notified Defendants that the Commission had reasonable cause to believe Defendants violated Title VII and invited Defendants to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

21.     The Commission engaged in communications with Defendants to provide Defendants with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

22.     The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

23.     By letter dated January 4, 2023, the Commission notified Defendants that conciliation had failed.

24.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

25.     Since at least October 2018, Defendants have engaged in unlawful employment practices at their facilities in violation of Section 703(a) of Title VII, 42 U.S.C. §2000(e)-(2)(a).

26.     In or about October 2018, Defendants hired Mr. Robinson as the Store Manager for Defendants' Hope Mills, N.C. location.

27.     In or about April 2019, Mr. Robinson became the Store Manager for Defendants' location on Waldos Beach Road in Fayetteville, N.C. Mr. Robinson also remained Store Manager

for Defendants' Hope Mills, N.C. location.

28. In or about October 2019, Mr. Robinson assumed management responsibility for Defendants' location on Bingham Drive in Fayetteville N.C. and became the General Manager for all three of Defendants' locations in the Fayetteville, N.C. area.

29. Mr. Robinson continued to work for Defendants as a General Manager for all three of Defendants' locations until he was forced to resign on or around August 21, 2021.

## COUNT I:
## Hostile Work Environment (Race and Color)

30. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 above.

31. From in or about October 2018 until on or about August 21, 2021, Defendants subjected Mr. Robinson to a hostile work environment based on his race and color (Black), in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-2.

32. Throughout Mr. Robinson's employment, Defendants' President and Owner made numerous racially offensive comments directly to Mr. Robinson.

33. The harassing statements made to Mr. Robinson by Defendants' President and Owner include, but are not limited to:

    a. Telling Mr. Robinson that Black men were "no good;"

    b. Telling Mr. Robinson that Blacks were all thieves;

    c. Telling Mr. Robinson that Mexicans work harder than Black people and did not complain, like Blacks did;

    d. Instructing Mr. Robinson not to hire Black applicants because they were Black; and

    e. Instructing Mr. Robinson to fire Black employees because they were Black.

5

34. Defendants' President and Owner also made numerous offensive comments criticizing traditionally Black hairstyles, such as "locs" and "dreadlocks," including but not limited to:

   a. Telling Mr. Robinson that if someone had dreadlocks, they either sold drugs or were in a gang,

   b. Instructing Mr. Robinson to not hire Blacks with dreadlocks; and

   c. Instructing Mr. Robinson to fire a Black employee who wore her hair in locs, saying "I told you, I don't want these people. This is bad for business. People come in and see her."

35. On numerous occasions during Mr. Robinson's employment, Defendants' President and Owner told Mr. Robinson that Mr. Robinson was the only "Black person" he trusted to run his restaurants and the only "Black person" he had ever allowed to have the keys to his restaurants.

36. On occasions when Mr. Robinson protested the President and Owners' racial comments, Mr. Robinson would remind Defendants' President and Owner that Mr. Robinson and his family were Black. Defendants' President and Owner would respond "You're not really Black" and state that Mr. Robinson "had Puerto Rican in him."

37. Defendants' President and Owner's hostility toward Black individuals escalated after a series of burglaries and robberies which occurred at Defendants' locations in late 2019 and early 2020.

38. The unwelcome and offensive racial comments by Defendants' President and Owner were made to Mr. Robinson with increasing frequency after the burglaries and robberies began, and the offensive behavior continued to escalate through the remainder of Mr. Robinson's

employment.

39. The racially offensive comments described herein created a hostile work environment for Mr. Robinson because of his race and color (Black).

40. The racially offensive comments described herein were offensive to Mr. Robinson.

41. The harassment was severe and pervasive and altered the terms and conditions of Mr. Robinson's employment and created an abusive work environment.

42. Defendants' policies and procedures failed to prevent or correct the harassment.

43. The unlawful practices complained of above have deprived Mr. Robinson of equal employment opportunities and have adversely affected his status as an employee because of his race and color (Black).

44. The unlawful employment practices complained of above were willful and intentional.

45. The unlawful employment practices complained of above were committed with malice or with reckless indifference to the federally protected rights of Mr. Robinson.

## COUNT II:
## Constructive Discharge Based on Race and Color

46. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

47. On or about August 21, 2021, Mr. Robinson was constructively discharged from his employment with Defendants because of the intolerable working conditions of the hostile environment based on his race and color (Black), in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-2.

48. Throughout the course of Mr. Robinson's employment, he was subjected to hostile working conditions created by Defendants' President and Owner's repeated racial slurs and

disparaging comments based on race and color.

49. During his employment, the working conditions for Mr. Robinson worsened as the verbal hostility exhibited by Defendants' President and Owner escalated.

50. In or around mid-June 2021, the offensive comments by Defendants' President and Owner turned from outward verbal hostility to direct verbal attacks on Mr. Robinson because of his race and color.

51. In or around mid-June 2021, Defendants' President and Owner blamed Mr. Robinson for the burglaries and robberies that had been occurring at Defendants' restaurants because Mr. Robinson had hired Black people and they "keep coming back."

52. Mr. Robinson took offense to the racial comments and the discussion escalated causing Mr. Robinson to leave work.

53. Defendants' President and Owner apologized the following day which resulted in Mr. Robinson returning to work.

54. Notwithstanding the apology, Defendants' President and Owner continued to make racially harassing comments.

55. On or about August 21, 2021, Mr. Robinson was forced to resign from his employment as a result of the racially hostile work environment caused by Defendants' President and Owner.

56. The unlawful practices complained of above have deprived Mr. Robinson of equal employment opportunities and have adversely affected his status as an employee because of his race and color (Black).

57. The unlawful employment practices complained of above were willful and intentional.

58. The unlawful employment practices complained of above were committed with malice or with reckless indifference to the federally protected rights of Mr. Robinson.

59. As a direct and proximate result of Defendants' violations of Title VII, Mr. Robinson suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT III:
## Failure to Hire Based on Race and Color

60. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59 above.

61. Since at least 2019, Defendants have engaged in unlawful employment practices at their locations in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-(2)(a)(1), when Defendants failed to hire a class of Black applicants because of their race and color (Black).

62. Defendants' President and Owner directed Mr. Robinson, General Manager of Defendant's Fayetteville, N.C. area locations, not to hire Black applicants.

63. Specific examples of Defendant's failure to hire Black applicants include, but are not limited to:

    a. During the summer of 2021, Defendants' President and Owner refused to hire a Black applicant, stating "I don't want to hire this type of people [referring to Blacks]" and

    b. In May or June 2021, Defendants failed to hire another Black applicant who was qualified to work for Defendants.

64. Almost every time Defendants' President and Owner discussed hiring with Mr. Robinson, Defendants' President and Owner made racially offensive comments about Black applicants.

65. Defendants repeatedly instructed managers to not hire Black applicants or applicants with traditionally Black hair styles, due to their race and color.

66. The unlawful practices complained of above have deprived a class of Black applicants of equal employment opportunities and have adversely affected their status because of their race and color (Black).

67. The unlawful employment practices complained of above were willful and intentional.

68. The unlawful employment practices complained of above were committed with malice or with reckless indifference to the federally protected rights of the class of Black applicants.

## COUNT IV:
## Discharge Based on Race and Color

69. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 68 above.

70. Since at least 2019, Defendants have engaged in unlawful employment practices at their locations in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-(2)(a)(1) when Defendants discharged a class of Black employees because of their race and color (Black).

71. After the burglaries and robberies began in late 2019, Defendants' President and Owner blamed Defendants' Black employees for the crimes and began instructing Mr. Robinson to fire Black employees.

72. In or around late 2019 or early 2020, a burglary occurred at one of Defendants' Fayetteville, N.C. locations. Defendants' President and Owner blamed a Black employee who wore his hair in "locs" and instructed Mr. Robinson to terminate his employment without providing any evidence or support for the claim that the Black employee committed the burglary.

73. In or around early 2020, a burglary occurred at Defendants' Hope Mills, N.C. location. Defendants' President and Owner blamed a Black employee and instructed Mr. Robinson to fire the Black employee, without providing any evidence or support for the claim that the Black employee had been involved in the burglary.

74. Relating to the early 2020 burglary, when instructing Mr. Robinson to fire the Black employee, Defendants' President and Owner referred to the employee as "the Black dude," and made disparaging comments about the employee based on his race such as, "look at the beard, I think he fits the description," "he needs money for his habit," and "he looks like the type that would break in and take money."

75. In or around mid-2020, a burglary occurred at another of Defendants' Fayetteville, N.C. locations. Defendants' President and Owner instructed Mr. Robinson to fire a Black employee. When Mr. Robinson refused, Defendants' President and Owner fired the Black employee himself.

76. In or around the summer of 2020, two of Defendants' employees were held up during a robbery at one of Defendants' Fayetteville, N.C. locations. One of the employees was Black and the other was not.

77. Defendants' President and Owner told Mr. Robinson that the Black employee must have known the perpetrator because the perpetrator was Black.

78. Defendants' President and Owner then discharged the Black employee but did not discharge the other employee, who was not Black.

79. The unlawful practices complained of above have deprived a class of Black applicants of equal employment opportunities and have adversely affected their status because of their race and color (Black).

80. The unlawful employment practices complained of above were willful and intentional.

81. The unlawful employment practices complained of above were committed with malice or with reckless indifference to the federally protected rights of the class of Black applicants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in discrimination based on race and/or color in violation of Title VII.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black individuals, and which eradicate the effects of past and present unlawful employment practices.

C. Order Defendants to make Darryl Robinson, and other Black employees and applicants, whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and front pay.

D. Order Defendants to make Darryl Robinson, and other Black employees and applicants, whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendants to make Darryl Robinson, and other Black employees and

applicants, whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendants to pay Darryl Robinson, and other Black employees and applicants, punitive damages for their willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such other relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact that arises out of this complaint.

Respectfully submitted this 16th day of March 2023.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel
131 M Street, NE
Washington, D.C. 20507

CHRISTOPHER LAGE
Deputy General Counsel

MELINDA C. DUGAS
Regional Attorney

AMY E. GARBER
Trial Attorney

**s/Amy E. Garber**
Trial Attorney
Virginia Bar No. 37336
Telephone: (757) 600-4726
Email: amy.garber@eeoc.gov

JOSHUA KADEL
Trial Attorney
Virginia Bar No. 89308
Telephone: (804) 362-6924
Email: joshua.kadel@eeoc.gov


U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Facsimile: (704) 954-6412

**ATTORNEYS FOR PLAINTIFF**